## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**Mark & Shawnda Miller**
     **Plaintiffs,**

**vs.**                                                  **Case No.**  3:17-cv-03429

**Midland Credit Management, Inc.,**
**Portfolio Recovery Associates, LLC,**
**Atlantic Credit and Finance, Inc.**
     **Defendants.**

### COMPLAINT

1. The Plaintiffs, Mark & Shawnda Miller, are residents of West Virginia.

2. The Plaintiffs are persons who fall under the protection of Article 2 of the West Virginia Consumer Credit and Protection Act (herein "WVCCPA") and is entitled to the remedies set forth in Article 5 of the WVCCPA.

3. The Defendant, Midland Credit Management, Inc. ("Midland"), is a debt collector as defined by *West Virginia Code* '46A-2-122(d) engaging directly or indirectly in debt collection as defined by *West Virginia Code* '46A-2-122(c) within the State of West Virginia, including Putnam County, West Virginia.

4. The Defendant, Portfolio Recovery Associates, LLC, ("Portfolio"), is a debt collector as defined by *West Virginia Code* '46A-2-122(d) engaging directly or indirectly in debt collection as defined by *West Virginia Code* '46A-2-122(c) within the State of West Virginia, including Putnam County, West Virginia.

5. The Defendant, Atlantic Credit and Finance, Inc, ("Atlantic"), is a debt collector as defined by *West Virginia Code* '46A-2-122(d) engaging directly or indirectly in debt collection as defined by *West Virginia Code* '46A-2-122(c) within the State of West Virginia, including Putnam County, West Virginia.

6. Plaintiff is a person who calls under protection of 15 USC § 1692 *et seq* of the federal
   Fair Debt Collection Practices Act.

7. The Defendants are all debt collectors as defined by 15 USC § 1692a.

8. The Defendant, Midland Credit Management, Inc. ("Midland"), is a corporation having
   its principal offices in a state other than West Virginia and which does business in West
   Virginia.

9. After the Plaintiffs became in arrears upon the alleged indebtedness to the Defendants,
   upon their account sold to them by Citibank, NA, ("Citi") and Synchrony Bank
   ("Synchrony") the Defendants all began to engage in collection of such indebtedness
   through the use of telephone calls placed to Plaintiffs, by written communications and did
   otherwise communicate with Plaintiffs to collect the alleged debt.

10. The Plaintiffs retained the undersigned counsel to represent Plaintiffs interest in
    connection with consumer indebtedness on which Plaintiffs had become in arrears.

11. Thereafter, on or about January 29, 2016 the Plaintiffs mailed a letter to the Defendant
    Citi at their corporate headquarters advising Citi the Plaintiffs had retained an attorney,
    and providing the Defendant with the name, address, and telephone number of their
    attorney.

12. On the same day, the Plaintiffs mailed another separate letter to Synchrony Bank on
    January 29, 2016 at Synchrony's corporate headquarters in Draper, Utah advising
    Synchrony Plaintiffs had retained an attorney, and providing the Defendant with the
    name, address, and telephone number of their attorney.

13. In the letter, the Plaintiffs mailed the Defendant Citi on January 29, 2017, the Plaintiffs requested the Defendant stop calling the Plaintiffs and provided the Defendant with the Plaintiffs' telephone numbers so the Defendant knew which numbers to stop calling, including the Plaintiffs' cell phone numbers.

14. The Plaintiffs, in the letter to Citi, removed Citi's authorization to call the Plaintiffs.

15. In the letter, the Plaintiffs mailed the Defendant Synchrony on January 29, 2017, the Plaintiffs requested the Defendant stop calling the Plaintiffs and provided the Defendant with the Plaintiffs' telephone numbers so the Defendant knew which numbers to stop calling, including the Plaintiffs' cell phone numbers.

16. The Plaintiffs, in the letter to Synchrony, removed the Synchrony's authorization to call the Plaintiffs.

17. Upon receipt of the January 29, 2016 letter to Citi, Citi did not place any additional calls to the Plaintiffs.

18. Upon receipt of the January 29, 2016 letter to Citi, Synchrony Bank did not place any additional calls to the Plaintiffs.

19. On or about March 4, 2016, Citi sent a letter to the Plaintiffs informing them that their Citi account had been sold to Defendant Midland.

20. On March 8, 2016, Portfolio sent a letter to the Plaintiffs informing them that their Synchrony account for Lowes had been sold to Portfolio.

21. On March 9, 2016, Portfolio sent a letter to the Plaintiffs informing them that their Synchrony account for Wal-Mart had been sold to Portfolio.

22. Upon information and belief, Citi transferred all of the Plaintiffs' relevant account records to Midland, including the notice of attorney representation letter sent on January 29, 2016.

23. Upon information and belief, Synchrony transferred all of the Plaintiffs' relevant account records to Portfolio and Midland, including the notice of attorney representation letter sent on January 29, 2016.

24. Thereafter, Defendant Midland continued to cause telephone calls to be placed to the Plaintiffs on either on both the Citi and Synchrony accounts.

25. Thereafter, Defendant Portfolio continued to cause telephone calls to be placed to the Plaintiffs on the Synchrony accounts.

26. Both Midland and Synchrony are imputed with knowledge of the letters sent to Citi and Synchrony alerting those creditors that the Plaintiffs had retained counsel and wished not to be contacted anymore.

27. On or about March 31, 2016, Defendant Midland sent a letter to Plaintiffs informing them they had retained Defendant Atlantic Credit and Finance to being debt collection of a Synchrony Account.

28. Thereafter, Defendant Atlantic continued to cause telephone calls to be placed to the Plaintiffs.

29. Defendant Atlantic is imputed with the same knowledge Midland was imputed with.

30. The Defendants maintain records of each call placed to the Plaintiffs by date, time called, duration of call, the identity of the Defendants' employee and notes or codes placed upon such record by the Defendants' employee.

31. Such records will reflect that the Defendant placed telephone calls to the Plaintiffs residential telephone number after it appeared that Plaintiffs were represented by an attorney and the attorney's name and telephone number were known or could be reasonably ascertained.

32. The Defendants only stopped calling when the Plaintiffs sent additional letters to Midland, Portfolio, and Atlantic advising them that they had retained counsel.

## COUNT I

### *VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT*

33. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

34. The Defendants have all engaged in repeated violations of Article 2 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to,

   a. engaging in unreasonable or oppressive or abusive conduct towards the Plaintiff in connection with the attempt to collect a debt by placing telephone calls to the Plaintiff after the Plaintiff has requested the Defendant stop calling the Plaintiff in violation of *West Virginia Code* '46A-2-125;

   b. using unfair or unconscionable means to collect a debt from Plaintiff in violation of *West Virginia Code* '46A-2-128 by communication with Plaintiff after it appeared that the Plaintiff was represented by an attorney;

35. As a result of the Defendants' actions, Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## COUNT II

### VIOLATION OF THE WEST VIRGINIA COMPUTER CRIMES AND ABUSE ACT

5

36. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

37. The Plaintiffs are "persons" as defined by *West Virginia Code* '61-3C-3(n) as Plaintiffs are "natural persons."

38. The Defendant, Midland, is a "person" as defined by *West Virginia Code* '61-3C-3(n) as Defendant is a "limited partnership, trust association or corporation."

39. The Defendant, Portfolio, is a "person" as defined by West Virginia Code '61-3C-3(n) as Defendant is a "limited partnership, trust association or corporation."

40. The Defendant, Atlantic, is a "person" as defined by West Virginia Code '61-3C-3(n) as Defendant is a "limited partnership, trust association or corporation."

41. The Defendants, with the intent to harass, used an "electronic communication device" as defined by West Virginia Code '61-3C-14a to make contact with the Plaintiffs after being requested by Plaintiffs to desist from contacting the Plaintiffs in violation of *West Virginia Code* '61-3C-14a(a)(2).

42. The Plaintiffs were injured as a result of the violations of the *West Virginia Computer Crimes and Abuse Act* as set forth above.

43. The Defendants' actions violated *West Virginia Consumer Credit and Protection Act* Chapter 46A as described in Count I above and therefore violate this statute as well.

44. Plaintiffs seek compensatory damages for injuries provided by *West Virginia Code* '61-3C-16(a)(1) and punitive damages pursuant to *West Virginia Code* '61-3C-16(a)(2).

45. As a result of the Defendants' actions, Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise caused indignation and distress.

COUNT III

## VIOLATION OF TELEPHONE HARASSMENT STATUTE

46. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

47. The Defendant Midland made or caused to be made telephone calls to the Plaintiffs causing Plaintiffs' telephone(s) to ring repeatedly and continuously with the intent to annoy and harass the Plaintiffs in violation of *West Virginia Code* '61-8-16(a)(3).

48. The Defendant Portfolio made or caused to be made telephone calls to the Plaintiffs causing Plaintiffs' telephone(s) to ring repeatedly and continuously with the intent to annoy and harass the Plaintiffs in violation of *West Virginia Code* '61-8-16(a)(3).

49. The Defendant Atlantic made or caused to be made telephone calls to the Plaintiffs causing Plaintiffs' telephone(s) to ring repeatedly and continuously with the intent to annoy and harass the Plaintiffs in violation of *West Virginia Code* '61-8-16(a)(3).

50. The Plaintiffs were injured by Defendants' violation of *West Virginia Code* '61-8-16(a)(3). As Plaintiffs were injured by Defendants' violation of *West Virginia Code* '61-8-16(a)(3), the Plaintiffs have a civil cause of action for damages Plaintiffs sustained by reason of said statutory violation pursuant to West Virginia Code §55-7-9 which so provides.

51. The Defendants' actions violated West Virginia Consumer Credit and Protection Act Chapter 46A as described in Count I above and therefore violate this statute as well.

52. As a result of the Defendants' actions, Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise caused indignation and distress.

## COUNT IV

### COMMON LAW NEGLIGENCE

53. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

54. Defendants negligently failed to train, supervise, monitor or otherwise control its employees to ensure that its employees did not violate the WVCCPA as alleged in Count I.

55. As a result of the Defendants' actions, Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

**COUNT V**

*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

56. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

57. The following conduct of Defendants was atrocious, intolerable and extreme so as to exceed the bounds of decency:

    a. Defendants placed telephone calls to Plaintiffs after Defendant knew that Plaintiffs were represented by an attorney in gross violation of the WVCCPA;

    b. Defendants have adopted policies and procedures without regard to West Virginia law, which violate West Virginia law and are designed to, or have the effect of, inflicting emotional distress upon consumers to coerce the consumer to pay money to the Defendant;

    c. Insofar as Defendants' violations of the WVCCPA are deemed to be Awillful,@ pursuant to *West Virginia Code* '46A-5-103(4) such conduct is, as a matter of law, criminal conduct punishable by fine and/or imprisonment;

8

    d. Insofar as Defendants' conduct caused a phone to ring with the intent to harass, such conduct is criminal conduct pursuant to *West Virginia Code* '61-8-16(a)(3) punishable by fine and/or imprisonment;

    e. Insofar as Defendants' conduct of engaging in telephone conversation with Plaintiffs undertaken with the intent to harass, such conduct is criminal conduct proscribed by *West Virginia Code* '61-8-16(a)(4) punishable by fine and/or imprisonment;

    f. Insofar as Defendants' conduct constituted knowingly allowing a phone under Defendant's control to be used to harass any person, such conduct is criminal conduct proscribed by *West Virginia Code* '61-8-16(b) punishable by fine and/or imprisonment.

58. As a result of the Defendants' actions, the Plaintiffs have suffered emotional distress.

59. As a result of the Defendants' actions, the Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

### COUNT VI

### *COMMON LAW INVASION OF PRIVACY*

60. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

61. The Plaintiffs have an expectation of privacy to be free from harassing and annoying telephone calls within the confines of Plaintiffs home.

62. The acts of the Defendants in placing telephone calls to Plaintiffs home telephone number invaded, damaged and harmed Plaintiff's right of privacy.

63. As a result of the Defendants' actions, the Plaintiffs suffered emotional distress.

64. As a result of the Defendants' action, the Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## COUNT VI

### *VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT*

65. The Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

66. The Defendant Midland used a predictive or otherwise automated dialer system to call the Plaintiffs.

67. The Defendant Portfolio used a predictive or otherwise automated dialer system to call the Plaintiffs.

68. The Defendant Atlantic used a predictive or otherwise automated dialer system to call the Plaintiffs.

69. The predictive dialer systems resulted numerus calls being placed by the Defendants to the Plaintiffs' cell phones.

70. The Plaintiffs removed any consent that may have existed to call the Plaintiffs' cell phone by the act of Plaintiffs sending the Defendant Citi and Synchrony letters asking the parties to stop calling Plaintiffs on January 29, 2016.

71. The Defendant Midland is imputed with the knowledge that the Plaintiffs removed consent to call.

72. The Defendant Portfolio is imputed with the knowledge that the Plaintiffs removed consent to call.

73. The Defendant Atlantic is imputed with the knowledge that the Plaintiffs removed consent to call.

74. Upon information and belief, the Defendants had actual knowledge of the Plaintiffs' removal of consent to call as it was transferred with the rest of the Plaintiffs account records to Midland, Portfolio, and Atlantic.

75. Plaintiffs provided the Defendants with Plaintiffs' cell phone number in the letters to Citi and Synchrony so Defendants could identify specifically all numbers Defendants may no longer call.

76. As a result of the Defendants' actions, defendants have repeatedly violated the Telephone Consumer Protection Act 47 USCS § 227(b)(1) by:

   a. Making calls to the Plaintiffs' cellular telephone by means of an automatic dialing system.

77. The Defendants' violations of the Telephone Consumer Protection Act were willful to the extent the Plaintiffs repeatedly removed his consent to call his cell phone, and the Defendants ignored him.

As a result of the Defendants' actions, Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

**COUNT VII**

*VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT*

78. The Plaintiffs incorporates the previous paragraphs as if fully set forth herein.

79. The Defendants have engaged in repeated violations of 15 USC § 1692 *et seq* of the *Fair Debt Collection Practices Act*, including but not limited to,

    a.   causing Plaintiffs' phone to ring or engaging persons, including the Plaintiffs, in telephone conversations repeatedly or continuously or at unusual times or at times known to be inconvenient, with the intent to annoy, abuse or oppress the Plaintiffs after the Plaintiffs have removed the consent to call and provided the Defendants with the Plaintiffs' attorney's name and contact information in violation of 15 USCS § 1692d(5);

    b.  failure to properly send a notice of the debt for validation purposes of 15 USCS § 1692g(a);

    c.   failing to provide the debt collection warning in the initial disclosure of the debt as required by 15 USCS § 1692e(11);

    d.  failing to clearly disclose the name of the business entity making a demand for money upon Plaintiff's indebtedness in violation of 15 USCS § 1692d(6);

80. As a result of the Defendants' actions, Plaintiffs have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## DEMAND FOR RELIEF

Plaintiffs demand from the Defendants:

a.   Actual damages for the violations of the WVCCPA as authorized by *West Virginia Code* '46A-5-101(1) for all such violations that occurred up to the date and time of the filing of this complaint;

b. Statutory damages in the maximum amount authorized by *West Virginia Code* '46A-5-101(1) as adjusted for inflation pursuant to *West Virginia Code* '46A-5-106 for all such violations that occurred up to the date and time of the filing of this complaint;

c. Actual damages for violations of the FDCPA as authorized by 15 USCS § 1692k for all such violations that occurred up to the date and time of the filing of this complaint;

d. Statutory damages in the maximum amount authorized by 15 USCS § 1692k(a)(2);

e. Plaintiffs' cost of litigation, including attorney fees, court costs and fees, pursuant to *West Virginia Code* § 46A-5-104 and 15 USCS § 1692k(a)(3);

f. The Plaintiffs be awarded general damages for the Defendant's negligence as alleged in Count II of the Complaint;

g. $500 per violation of the Telephone Consumer Protection Act as provided for in in 47 USCS § 227(b)(3)(B);

h. $1,500 per violation of the Telephone Consumer Protection Act to the extent the violations were willful 47 USCS § 227(b)(3)(C);

i. The Plaintiffs be granted general damages and punitive damages for Defendant's conduct alleged in Count II, III, IV, and V;

j. Such other relief as the Court shall deem just and proper under the attendant circumstances.

### PLAINTIFFS DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

MARK & SHAWNDA MILLER
BY COUNSEL

BY:   /s/Benjamin M. Sheridan_____
      Benjamin M. Sheridan (# 11296)

13

*Counsel for Plaintiff*
Klein & Sheridan, LC
3566 Teays Valley Road
Hurricane, WV 25526
(304) 562-7111
Fax: (304) 562-7115